9426

RISH v. WINGARD ET AL.

(89 S. E. 400.)

1. WILLS—CONSTRUCTION—DEVISE TO TENANTS IN COMMON AND SURVIVORS—"HEIRS."—In a will leaving residue to four daughters equally, and on death of any without "issue or heirs" her share to go to survivors equally, the word "heirs" meant "issue," and on death of three without issue the estate vested in survivor in fee, under Civ. Code 1912, sec. 3571, providing that no words or limitation shall be necessary to convey an estate in fee simple by devise.

2. WILLS—CONSTRUCTION—DEVISE TO TENANTS IN COMMON—MARRIAGE.— The provision that, "should either of said four daughters marry off and desire their portion of said real estate and personal property, for the division to be made at their request, retaining the buildings for those who are left behind unmarried," marriage of one of the

daughters could only effect a separation of possession, because there might be marriage without issue,. and in the event of the death of one of the four without issue her share went to the survivors.

Before SEASE, J., Lexington, October, 1915. Reversed.

This is a suit by Ridonia Elizabeth Rish against Mary Ann Wingard and others for the construction of the will of Adam Rish. The paintiff-appellant makes the following statement of her case:

"Adam Rish by his will devised his real estate of about 658 acres to his wife for life; after her death, to his daughter, Martha Howell, 50 acres; to his daughter, Julia Boles, 50 acres; and to his daughter, Ridonia Elizabeth, 100 acres; 'and the remainder of my tract to go to my four daughters, viz., Nancy, Debby, Sibby and Mary Ann, to have, hold and keep, cultivate as their own property, each one of said four daughters to have an equal partition in valuation to be so divided.

" 'Fifth. Also for the said four daughters to have all my personal property as above named of every kind or nature whatever it may be, to be equally divided among them in valuation, said property, both real and personal, to be retained by the said four daughters, without any incumbrance whatever.

" 'Sixth. Should either of the said four daughters die without issue or heirs, then in that event their portion of property, both real and personal, of every description or kind, to go to the other three, two or one, as the case may be, who may still be living, without any incumbrance whatever, giving each one living an equal portion of such share or shares in valuation.

" 'Seventh. Should either of the said four daughters marry off and desire their portion of said real estate and

FOOTNOTE.—Limitation over on death without issue, see notes in 51 L. R. A. (N. S.) 485.

# 40 RISH v. WINGARD.

personal property, for the division to be made at their request, retaining the buildings for those who are left behind unmarried.

" 'Eighth. Should my daughter, Ridonia Elizabeth, die without issue or heir, then and in that event the said one hundred acres of land I given to her to be equally divided among my four last named daughters, viz., Nancy, Debby, Sibby and Mary Ann, to have and to hold as their own property.'

"After the death of wife of testator, the remainder of the tract of land, except that devised to Martha Howell, Julia Boles, and Ridonia Elizabeth, went into the possession of the four daughters, Nancy, Debby, Sibby, and Mary Ann. The two sisters, Nancy and Debby, both died unmarried while on the land in question. Mary Ann, the defendant here, married about 15 years ago her codefendant, John W. Wingard, and at her instance about 169 acres of the land was assigned to her, and she, in February, 1905, sold the same in fee to her codefendant, E. L. Asbill, who went into possession of same under her deed, and now holds the same thereunder. Upon the marriage of Mary Ann she left the homestead and the lands in question, moved off onto other property, and remained away from the land until after the death of Sibby.

"Sibby died, living on the premises in 1914, leaving of force her will, in which she gave to the plaintiff, Ridonia Elizabeth Rish, all of her real estate of any kind and character whatever for her life, and after her death to John P. Able in fee. Both the plaintiff and the defendant, Mary Ann Wingard, are now on the property in question under claim of title in fee in each.

"The case, on an agreed statement of facts, was heard by a Circuit Judge, who filed a decree, in which he holds that each of the four sisters, who hold the land in question, to whom it was devised in remainder after the death of their mother, took a fee in the land as tenant in common

with her other sisters, and that, as each sister died leaving other sisters, she did not die 'without heirs,' and that the interest of each sister as she died vested in the surviving sisters. From this decree both parties have appealed."

*Mr. C. M. Efird,* for plaintiff, submits: *"Issue or heirs" here means "children."*

*Messrs. Thurmond, Timmerman & Callison,* for defendants, cite: 59 S. C. 148; 9 S. C. 229.

June 30, 1916.

The opinion of the Court, reciting the foregoing statement of facts, was delivered by MR. JUSTICE FRASER.

There are two questions: (1) The meaning of the word "heirs." (2) The effect of marriage.

1. It is very manifest that the word "heirs" cannot have its technical meaning. If either should die without heirs, then to her sisters. The sisters are heirs in default of issue. Neither could die without heirs, if she left a sister. That would make a contradiction in terms. It is very manifest that the word "heirs" is used as synonymous with the word "issue." See *DuBose* v. *Flemming,* 93 S. C. 182, 76 S. E. 277. There was no disposition of the estate on the death of the survivor of the four without issue; therefore, under section 3571, Code of 1912, the survivor of the four took a fee simple.

2. Marriage could only effect a separation of possession, because there might be marriage without issue, and in the event of the death of one of the four without issue her share went to the survivor or survivors. There is nothing in the will to indicate a different intention.

The judgment is reversed.